IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

HERBERT H. HILDERBRAND                                                           PLAINTIFF

V.                                                      CIVIL ACTION NO.: 3:09-CV-243-DPJ-FKB

LEVI STRAUSS & COMPANY                                                         DEFENDANT

ORDER

This employment dispute is before the Court on Defendant's Motion for Summary Judgment [112]. Having fully considered the issues and the parties' submissions in light of the applicable standards, the Court finds that Defendant's Motion should be granted in part and denied in part, as set forth below.

I.   FACTS & PROCEDURAL HISTORY

Plaintiff Herbert Hilderbrand sued Defendant Levi Strauss & Company (Levi) for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 623, 631, and unlawful retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a). He also asserted state-law claims for fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealing. Hilderbrand's claims arise from his allegedly unlawful termination as a Levi employee on December 10, 2008.

In 2003, Levi first terminated Hilderbrand's employment. Hilderbrand filed an age-discrimination suit against Levi, and the parties settled. As part of the settlement, Levi rehired Hilderbrand in 2005 as an inventory control manager (ICM) in its Canton, Mississippi Customer Service Center (CSC). In 2007, Hilderbrand applied, and was competitively selected, for a temporary assignment to Levi's SAP team, a group of 35 employees charged with implementing a new resource management software system. From January 2008 to October 2008, Hilderbrand

worked primarily at Levi's corporate headquarters in San Francisco, California.  At the conclusion of the SAP project, he returned to the Canton CSC.  In December 2008, Levi again terminated Hilderbrand's employment.  Hilderbrand alleges that Levi terminated his employment because of his age and in retaliation for his 2003 lawsuit.  At the time, he was 58 years old.

Levi now seeks summary judgment on all claims.  Federal question jurisdiction exists under 28 U.S.C. § 1331, and the Court exercises supplemental jurisdiction over Hilderbrand's state-law claims under 28 U.S.C. § 1367.

II.     STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The non-moving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    ANALYSIS

    A.    Hilderbrand's ADEA Claim

As an initial matter, the parties dispute the proper analysis for Hilderbrand's ADEA claim.  Specifically, Levi argues that "it is unclear to date whether the Supreme Court's holding in *Gross* [*v. FBL Financial Services, Inc.*] precludes the use of the *McDonnell Douglass* burden-shifting framework."  Def.'s Mem. [113] at 13 (citing *Bell v. Raytheon*, No. 3:08-CV-0702-G, 2009 U.S. Dist. LEXIS 67016, at *13 (N.D. Tex. Jul. 31, 2009)).  But Hilderbrand correctly responds that "*Gross* did not do away with the *McDonnell Douglass* framework" in ADEA cases.[1]  Pl.'s Mem. [130] at 8.  While *Gross*'s ultimate impact on the applicability of *McDonnell Douglas* remains unclear, the Fifth Circuit has consistently observed that it is bound by precedent to apply burden shifting until the Supreme Court says otherwise.  *See, e.g.*, *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).  This Court is likewise bound.

---

    [1]*Gross* dealt with an employee's mixed-motive claims of age discrimination under the ADEA.  129 S. Ct. 2343 (2009).  The Supreme Court held that, in order to recover under the ADEA, a plaintiff must prove by the preponderance of the evidence that his age was the "'but-for' cause of the employer's adverse decision," not merely a motivating factor.  *Id.* at 2350.  Construing the statutory language of the ADEA, the Court determined that the mixed-motive analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), was not applicable to ADEA claims, and thus, the ADEA defendant never bears the burden of persuasion.  *Id.* at 2351.

       1.      Prima Facie Case

The burden-shifting analysis of *McDonnell Douglas* requires first that the Plaintiff produce sufficient evidence to establish a prima facie case of discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Thus under the ADEA, Hilderbrand must demonstrate that (1) he was a member of the protected class, an employee over the age of 40; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was replaced with someone outside the protected class or by a substantially younger employee; or that age was otherwise a factor in his termination. 29 U.S.C. §§ 623, 631 (2006). *Compare Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (applying *McDonnell Douglas* framework to 52-year old plaintiff's claim that he was replaced by a 42-year old employee), *with Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (applying modified *McDonnell Douglass* burden-shifting analysis to plaintiff's reduction-in-force case where plaintiff could not prove actual replacement). Here, the parties do not dispute the first three elements of Hilderbrand's prima facie case. The final element is contested.

Hilderbrand initially argues that he was replaced by former Receiving Supervisor Adrian Woodall, a man 16 years is junior. He further notes that Woodall continues to serve as the ICM at the Canton CSC. Levi counters that Hilderbrand was not technically "replaced" because he was terminated as part of a reduction in force. But questions of fact exist as to whether Woodall replaced Hilderbrand and whether Hilderbrand was part of a reduction in force.

In addition, if Levi is correct that Hilderbrand was subject to a reduction in force, then it would alter the fourth element of the prima facie test and relieve Hilderbrand's duty to show that he was replaced:

> In order to establish a prima facie case of age discrimination in the context of a RIF, a plaintiff must demonstrate: (1) membership in the protected class; (2) an adverse employment action; (3) qualifications to assume an available position; and (4) direct, circumstantial, or statistical evidence tending to indicate that age was a motivating factor for termination.

*Van Cleave v. Ameron Int'l Inc.*, 54 F. App'x 793 (5th Cir. 2002) (citing *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir. 1991)).  Consistent with this test, Hilderbrand offers the expert report of Dr. Carl Brooking, contending that it "show[s] a trend towards discrimination," in Levi's reduction-in-force data because "72.73% of those employees terminated by Levi . . . were age 40 and over."  Pl.'s Mem. [130] at 10.

Levi discounts Hilderbrand's statistical evidence, arguing that it "cannot create a genuine issue of material fact because it is devoid of context and does not control for any relevant factors."  Def.'s Reply [132] at 2.  This statement is true at the pretext stage.  *See*, *e.g.*, *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006), *cited in* Def.'s Reply [132] at 2.  But the Fifth Circuit treats statistical evidence differently at the prima-facie-case stage.  *See E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996); *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir. 1990).

"To establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (ADEA reduction-in-force case) (citing *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).  Plaintiff must "raise[] a genuine issue of material fact as to each element of his prima facie case."  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001).  The Court concludes that Hilderbrand satisfied that burden with respect to the replacement issue and would alternatively meet his burden under a reduction-in-force analysis.

2.	Levi's Legitimate Nondiscriminatory Justification

In the face of a prima facie case, "the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Identifying a nondiscriminatory basis for termination is a burden "of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Levi contends that it terminated Hilderbrand's employment as part of a reduction in force. Levi has met its burden of production under *McDonnell Douglas*. *See Tex. Instruments, Inc.*, 100 F.3d at 1181 (noting that a reduction in force "is itself a legitimate nondiscriminatory reason for discharge").

3.	Pretext

Because Levi presented a legitimate nondiscriminatory reason for its decision, Hilderbrand must ultimately show "that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557. "[T]o satisfy step three of the *McDonnell Douglas* framework, a plaintiff 'must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.'" *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (quoting *Wallace v. Methodist hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Levi's theory of the case is that Hilderbrand was without a position—and was thus RIFed—because his SAP assignment had concluded, *see* Def.'s Reply [132] at 2 ("all SAP team members . . . kept their formal job titles despite that they no longer held those prior positions"), and his prior position as ICM had been backfilled, *see* Def.'s Mem. [113] at 7. But Hilderbrand

argues that he "was not without a position when the [SAP] project concluded." Pl.'s Mem. [130] at 12. Rather, he claims that he was returned to his position as ICM upon completion of his SAP duties, and points to a letter from Vice President Sherrie Schwartz stating, "At the time of the layoff, Herbert was employed as an Inventory Control Manager for LS&Co." Pl.'s Resp. [129] Ex. 3; *see also id.*, Ex. 13 (describing Hilderbrand's SAP assignment title of "Requisition-to-Check Business Process Lead" as "functional" and "specific to [his] role on the SAP project," and noting that the title would "be relinquished on completion of [the] assignment," but that his "current job classification, band, incentive participation, and other elements of . . . compensation [would] remain unchanged, as a result of [the SAP] assignment").

Hilderbrand also argues that his ICM position was not permanently backfilled. He notes that Levi never announced Adrian Woodall's promotion, nor made "any statement of permanent assignment of Mr. Woodall as the Inventory Control Manager during the time of the SAP Project." Pl.'s Mem. [130] at 14. Rather, Hilderbrand argues that his ICM duties were temporarily divided between Woodall (inventory) and Leonard Mack (receiving). *Id.*; *see also* Pl.'s Resp. [129] Ex. 15 (noting that Woodall would assume additional responsibility for the inventory control department at the Canton CSC, while Mack would lead the receiving department and functions); *id.*, Ex. 22 (expressing then-Canton CSC Director Fernando Durand's intent that Woodall serve as "acting manager" during Hilderbrand's absence). Hilderbrand further notes that the ICM position has never been eliminated. Woodall—16 years Hilderbrand's junior—now holds the position. Pl.'s Mem [130] at 12.

Further, Hilderbrand illustrates the inconsistent positions taken by Levi regarding who actually made the termination decision. He notes that in its early change-of-venue Motion, Levi

argued, "[T]he decision to terminate [Hilderbrand] was part of a company[-]wide layoff [sic] and elimination of positions in the financial services department of Levi Strauss & Co.[,] and said decision was made at the corporate office of Levi Strauss & Co. in San Francisco, California." Def.'s Mot. [5] at 4.  He contrasts that language with Canton CSC Director Mark Grovich's sworn testimony that he was the sole decisionmaker as to Hilderbrand's termination.  Grovich Decl. [115] ¶ 23.  In the Fifth Circuit, substantial inconsistencies in the defendant's explanation for its adverse employment decision can, especially when considered with other evidence, create an inference of pretext.  *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (reversing summary judgment and finding that inconsistencies in supervisor's account of the facts surrounding employer's promotion decision—including the identities of participants, the criteria used, and whether a consensus was reached— "cast doubt on [employer's] explanation, thereby enabling a reasonable factfinder to conclude that it was false").[2]  And because Hilderbrand

---

[2]*Accord Coburn v. Rockwell Automation, Inc.*, 238 Fed. App'x. 112, 122 (6th Cir. 2007) ("A reasonable jury could infer that if [employer] cannot even give a straight answer about who recommended [ADEA plaintiff] for the RIF list, it is trying to hide something.").  *See also Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 112 (10th Cir. 2009) (employer's reduction-in-force documentation "fails to name any of the decisionmakers who purportedly made the decisions it describes, speaking instead as if all decisions were made only by an impersonal 'we,'" and thus "casts a shadow of doubt over [the employer's] explanations"); *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 677–78 (7th Cir. 2003) (finding employer's reliance on a new explanation after substantial pretrial litigation had occurred was at least "fishy," and that "a jury could rely on additional evidence to find this explanation to be pretextual").  *But cf. Stingley v. Den-Mar Inc.*, 347 F. App'x 14, 20 (5th Cir. 2009) (inconsistency as to which business entity lost lucrative contract justifying reduction in force, without more, was insufficient to establish pretext); *Braymiller v. Lowe's Home Ctrs. Inc.*, 325 F. App'x 311, 314 (5th Cir. 2009) (finding that employer's justification for employment termination of "violation of company policy" in one document and "code of ethics" in another "always concerned the same events" and were "at best a change in emphasis regarding which violation of company policy they believed was more important in the final [discharge] decision").

adduces other evidence, these inconsistencies need not carry all the water in support of Hilderbrand's pretext burden.

Finally, Hilderbrand points to Levi's disclosures, as required under the Older Worker's Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), to support his theory that he was not really terminated as part of the company's reduction in force. He first notes that neither his SAP title nor his ICM title appear in the second paragraph of the OWBPA disclosure form listing the positions identified for elimination. *See* Pl.'s Resp. [129] Ex. 2. He next argues that, while the title "Manager, Inventory Control (SAP)" is listed in the accompanying spreadsheet, it is the only position (out of 23) identified for termination on December 1. *Id.* All other CSC employees laid off were selected for termination on November 4. *Id.* Moreover, he points out Levi's adamant denial that Hilderbrand was still the manager of inventory control after he joined the SAP team.

Levi offers plausible explanations for all of this. But viewed in the light most favorable to Hilderbrand, as required under Rule 56, the conflicting evidence creates material questions of fact that are properly reserved for a jury. Levi's Motion is therefore denied as to Hilderbrand's age-discrimination claim.

B. Hilderbrand's Title VII Retaliation Claim

The *McDonnell Douglass* burden-shifting analysis also applies to Hilderbrand's retaliation claim.[3] *See Mayberry v. Mundy Contract Maint. Inc.*, 197 F. App'x 314, 317 (5th Cir.

---

[3]Title VII precludes retaliating against an employee who has complained about acts of discrimination at work. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice. . .to discriminate against any individual. . .because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

2006) (citation omitted). Thus, only after Hilderbrand shows "that (1) he engaged in a protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action," will the burden shift to Levi to offer a legitimate, nondiscriminatory reason for its actions. *Id.* (citing *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001)). Here, Hilderbrand has not demonstrated a causal connection between his 2008 termination and his 2003 age-discrimination lawsuit.

In order to establish the causation prong, "the evidence [must] demonstrate[] that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *see also Cox v. Desoto Cnty., Miss.*, No. 10-60405, 2011 WL 116318, at *2 (5th Cir. Jan. 13, 2011). Thus, courts in the Fifth Circuit generally require a plaintiff to prove the decisionmaker's knowledge as a threshold matter. *See, e.g.*, *Cox*, 2011 WL 116318, at *2 ("It is well established that, in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker.") (citation and internal quotations omitted); *Roberts v. Unitrin Specialty Lines Ins. Co.*, No. 09-10350, 2010 WL 5186773, at *4 (5th Cir. Dec. 21, 2010); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 884 (5th Cir. 2003); *Medina*, 238 F.3d at 684. "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Manning*, 332 F.3d at 883 n.6.

---

subchapter").

As previously noted, the parties dispute who actually terminated Hilderbrand's employment. But Hilderbrand fails to demonstrate knowledge of his 2003 lawsuit as to any of his proffered decisionmakers. His first candidate, Canton CSC Director Mark Grovich, testified that he neither knew of Hilderbrand's 2003 lawsuit, nor was he even employed by Levi when Hilderbrand's original suit was settled. Grovich Decl. [115] ¶ 26. Hilderbrand has offered no evidence to rebut Grovich's professed lack of knowledge.

Second, Hilderbrand observes that Levi previously pointed to unidentified corporate officers in California as the decisionmakers. *See* Pl.'s Mem. [130] at 16–19, *citing* Def.'s Motion for Change of Venue [5] at 4. Assuming—without deciding—that someone from the company's California headquarters did participate in making the decision to terminate the plaintiff, Hilderbrand has failed to identify that individual or establish that the unidentified person was aware of Hilderbrand's 2003 lawsuit.

Finally, Hilderbrand advances a third candidate—Vice President of Logistics Rich Keuther—who works in Dallas, Texas, and has undisputed knowledge of the 2003 lawsuit. But Hilderbrand's allegations regarding Keuther do not create a genuine issue of material fact. Many of the arguments in his Response are conclusory and lack citation to record evidence. The district court has no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006); *see also* Fed. R. Civ. P. 56(c)(3). Moreover, Hilderbrand's own sworn testimony belies the inferences he asks the Court to draw. When asked about Keuther's role in his termination, Hilderbrand testified: "I would think he would have some information, but I don't know what it would be. I'd be speculating if I said that." Foster Decl. [135] Ex. A, Hilderbrand Dep.

11

227:4–23.  When directly asked whether he had any personal knowledge or documentation to support his speculation that Keuther was involved in his termination, Hilderbrand responded, "No." *Id.*  The conclusory and speculative arguments of counsel found in the Response are of no greater weight.  *TIG Ins. Co.*, 276 F.3d at 759.

In short, Hilderbrand fails to identify any decisionmaker at Levi who was both aware of his 2003 lawsuit and a participant in the decision to terminate.  Levi's Motion for Summary Judgment is therefore granted as to Hilderbrand's retaliation claim.

      C.      Hilderbrand's State-law Claims

In addition to his federal claims, Hilderbrand brought claims against Levi for fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealing, both under state law.

Before addressing these claims, the Court must examine potential choice-of-law issues as to each.  Hilderbrand cites both California and Mississippi cases in support of his fraudulent misrepresentation claim, and argues that his breach-of-good-faith-and-fair-dealing claim must be decided under California law.  A federal court applies the choice-of-law rules of the forum.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Mississippi law, there is no choice-of-law issue if the law of the competing states is the same.  *S.C. Ins. Co. v. Keymon*, 974 So. 2d 226, 230 (Miss. 2008).  Here, Hilderbrand cannot recover for either claim—under California or Mississippi law—because he remained an at-will employee.

Levi expressly employed Hilderbrand on an at-will basis in his role as ICM.  Pl.'s Resp. [129] Ex. 9, Offer of Employment 2.  And the terms of his SAP assignment were essentially the

same. *Id.*, Ex. 13, SAP Offer 3.  Although Hilderbrand points to the November 18, 2008 e-mail from SAP Program Leader Mike Lee, that document did not change those terms.  *See id.*, Ex. 17.

        A.        Fraudulent Misrepresentation

To recover for fraudulent misrepresentation under Mississippi law, a plaintiff must prove the elements of fraud by clear and convincing evidence.  *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999) (citing *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992).  These elements are:

> 1)        a representation;
> 2)        its falsity;
> 3)        its materiality;
> 4)        the speaker's knowledge of its falsity or ignorance of its truth;
> 5)        his intent that it should be acted upon by the person and in the manner reasonably contemplated;
> 6)        the hearer's ignorance of its falsity;
> 7)        his reliance on its truth;
> 8)        his right to rely thereon;  and
> 9)        his consequent and proximate injury.

*Id.* at 761–62 (citing *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984)).

The fundamental flaw in Hilderbrand's claim is that an at-will employee cannot establish detrimental reliance in an employer's promises of future employment.  *See Vannoy v. Saks Inc.*, 87 F. App'x 349, 352 (5th Cir. 2004) (citing *Sanders v. Dantzler*, 375 So. 2d 774, 776–77 (Miss. 1979)); *accord Jacobs v. McCallister's Corp.*, No. 3:07-cv-00383-DPJ-JCS, 2008 WL 4416440, at *3 (S.D. Miss. Sept. 24, 2008) (applying Mississippi law).

Here, Hilderbrand has not offered any proof that he relinquished anything other than an at-will position.  Levi was free to terminate Hilderbrand's employment "at any time with or without cause, and with or without notice."  Pl.'s Resp. [129] Ex. 9, Offer of Employment 2.  In Mississippi, that is simply insufficient to establish a genuine issue of material fact as to

13

detrimental reliance.[4] Levi's Motion is therefore granted as to Plaintiff's fraudulent-misrepresentation claims.

    B.  Good Faith and Fair Dealing

Under Mississippi law, "there is no implied duty of good faith and fair dealing in employment contracts." *Cothern v. Vickers, Inc.*, 759 So. 2d 1241, 1248 (Miss. 2000) (citations omitted). Hilderbrand tacitly acknowledges the futility of his claim under Mississippi law and argues that California law should apply. He then cites *Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 471–72 (8th Cir. 1989), for the premise that California law "imposes a standard of good faith and fair dealing in all contracts, including employment contracts." Pl.'s Mem. [130] at 24. The Eighth Circuit's ruling in *Tolan* interpreted California law regarding a statute-of-limitations dispute. While it could be read to implicitly address good faith and fair dealing in the employment context, a more recent opinion from the California Supreme Court squarely addresses the issue. In *Guz v. Bechtel Nat. Inc.*, the California Supreme Court held:

> The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. The covenant thus cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.

8 P.3d 1089, 1110 (Cal. 2000) (citations and quotations omitted). The court concluded that "breach of the implied covenant cannot logically be based on a claim that the discharge of an

---

[4]The result would be the same under California law. *See Hunter v. Up-Right Inc.*, 864 P.2d 88, 93 (Cal. 1993).

at-will employee was made without good cause." *Id.* (citations and punctuation omitted).[5]

Thus, regardless of which State's laws are applied, Hilderbrand cannot recover. Hilderbrand's breach-of-implied-covenant claim fails as a matter of law.

IV.   CONCLUSION

For the reasons stated above, Defendant Levi's Motion for Summary Judgment [112] is DENIED as to Plaintiff Hilderbrand's age-discrimination claim, but is GRANTED as to all other claims. The parties are instructed to contact the Court to set the matter for pretrial conference.

**SO ORDERED AND ADJUDGED** this the 25th day of February, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[5]The California Supreme Court noted in dicta that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled." 8 P.3d at 1112 n.18. But here, Hilderbrand seeks no employment benefit other than employment itself.